**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARIEL HOENIG<br>54 Norman Ave, Apt. 1<br>Brooklyn, New York 11222<br><br>     Plaintiff,<br><br>v.<br><br>DREAMBUILDER INVESTMENTS, LLC<br>30 Wall Street<br>New York, New York 10005<br><br>and<br><br>DBI GROUP HOLDINGS, LLC<br>30 Wall Street<br>New York, New York 10005<br><br>and<br><br>DBI FUND HOLDINGS, LLC<br>30 Wall Street<br>New York, New York 10005<br><br>and<br><br>DBI RESIDENTIAL, LLC,<br>30 Wall Street<br>New York, New York 10005<br><br>and<br><br>PETER ANDREWS<br>1 West Street, Apt. 2436<br>New York, New York 10004<br><br>and<br><br>GREG PALMER<br>172 Main Street<br>Kingston, New Hampshire 03848 | Civil Action No.: _____<br><br><br>**COMPLAINT** |

I312989.3

| and | |
| ELIZABETH EISS<br>45 West 60th Street, Apt. 17a<br>New York, NY 10023-7943,<br><br>Defendants. | |

Plaintiff Ariel Hoenig ("Hoenig" or "Plaintiff") states the following complaint against Defendants Peter Andrews ("Andrews"), Gregory Palmer ("Palmer"), Elizabeth Eiss ("Eiss"), Dreambuilder Investments, LLC, DBI Group Holdings, LLC, DBI Fund Holdings, LLC, and DBI Residential, LLC (collectively, "Defendants").

### Parties

1.       Plaintiff  is an individual residing at 54 Norman Ave, Apt. 1, Brooklyn, New York 11222.

2.       Upon information and belief, Defendant Dreambuilder Investments, LLC ("DBI") is a limited liability company formed under the laws of the State of New York with its principal place of business located at 30 Wall Street, 6th Floor, New York, New York 10005.

3.       Upon information and belief, Defendant DBI Group Holdings, LLC ("DBI Group Holdings") is a limited liability company formed under the laws of the State of Delaware with its principal place of business located at 30 Wall Street, 6th Floor, New York, New York 10005.

4.       Upon information and belief, Defendant DBI Fund Holdings, LLC ("DBI Fund Holdings") is a limited liability company formed under the laws of the State of Delaware with its principal place of business located at 30 Wall Street, 6th Floor, New York, New York 10005.

5.       Upon information and belief, Defendant DBI Residential, LLC ("DBI Residential") is a limited liability company formed under the laws of the State of New York with its principal place of business located at 30 Wall Street, 6th Floor, New York, New York 10005.

1312989.3

6.      Upon information and belief, Defendant Andrews is an individual residing at 1 West Street, Apartment 2436, New York, New York 10004, and is the Chief Executive Officer of Dreambuilder Investments and a Member of each of the DBI Defendants.

7.      Upon information and belief, Defendant Palmer  is an individual residing at 172 Main Street, Kingston, New Hampshire 03848, and is a Member of Dreambuilder Investments and the Managing Member of DBI Group Holdings.

8.      Upon information and belief, Defendant Eiss is an individual residing at 45 West 60th Street, Apt. 17a, New York, NY 10023-7943, and was a Member and the Chief Operating Officer of Dreambuilder Investments from 2007 to approximately 2012.

## Jurisdiction and Venue

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 inasmuch as the matter involves a federal question of securities fraud.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and the governing promissory notes described more fully herein.

## Facts Common to All Counts

11.      Hoenig is a musician who began investing funds with Defendants in 2005.

12.      DBI issued promissory notes to Hoenig in exchange for the funds provided by Hoenig.  Typically, the promissory notes provided by DBI provided for interest only payments during the life of the promissory notes with repayment of the principal upon the promissory notes reaching maturity.

13.      Instead of repaying the promissory notes upon maturity, DBI engaged in a practice of restructuring and reaffirming the debt by repeatedly issuing new promissory notes and ultimately attempting to extinguish the debt through a fraudulent equity conversion scheme.

1312989.3

### A. The October 1, 2007 Promissory Note and Security Agreement

14.     On October 1, 2007, DBI issued a Promissory Note and Security Agreement to Hoenig in the amount of $700,000, a true and correct copy of which is attached hereto as **Exhibit A** (hereinafter, the "10/1/07 Promissory Note"). The 10/1/07 Promissory Note was issued by DBI to satisfy previous debts and encompass an increased investment by Hoenig of an additional $100,000 for a total principal amount at that time of $700,000.

15.     Under the terms of the 10/1/07 Promissory Note, DBI agreed to make twenty-four (24) monthly interest payments in the amount of $12,250 each at an interest rate of twenty-one percent (21%) per annum. Upon reaching maturity, DBI was required to repay Hoenig the entire principal amount of $700,000.

16.     DBI failed to make the required interest payments and failed to repay the principal balance when it became due. As of the 10/1/07 Promissory Note's maturity date, at least $69,000 in accrued interest remained due and owing. Interest continued to accrue on the unpaid principal balance according to the terms of the promissory note.

17.     The 10/1/07 Promissory Note defines an event of default under the terms and conditions of the promissory note for the "nonpayment when due of any amount payable hereunder or the nonperformance or failure of any representation, warranty or covenant hereunder . . . ."

18.     By its terms, the 10/1/07 Promissory Note is secured by a lien and security interest in all right, title and interest in the mortgage note investments in which the funds were to be invested by the Defendants, including "all instruments and documents representing said collateral, all distributions, property and money payable or deliverable in respect of said collateral, and all proceeds and substitutions thereof, whether now owned or hereafter acquired or obtained by Maker (collectively, the 'Collateral')."

1312989.3

19.     The security interest agreement reflected in the 10/1/07 Promissory Note similarly provides as follows: "Copies of said Collateral will be made available to Payee once funds have been applied by Maker toward the purchase of assets." DBI failed to make copies of the collateral allegedly purchased available to Hoenig.

20.     In the event of DBI's failure to cure a default, Hoenig is entitled to take "immediate possession of all Collateral not then in the actual, physical possession of Payee, may arrange for the transfer of the Collateral or any part thereof into the name of Payee or its nominee, and may endorse, foreclose on, receive and collect all property or money in connection with the Collateral."

21.     DBI is similarly obligated to "pay all costs and expenses of collection and enforcement of this Note (including reasonable attorneys' fees) and all monetary obligations of Maker to Payee under the Agreement, other than the payment of principal and interest."

22.     Defendants failed and refused to cure the subject defaults.

**B.     *The October 1, 2008 Promissory Note and Security Agreement***

23.     On or around October 1, 2008, DBI issued another Promissory Note and Security Agreement to Hoenig in exchange for an additional $100,000, a true and correct copy of which is attached hereto as **Exhibit B** (hereinafter, the 10/1/08 Promissory Note").

24.     Pursuant to the terms of the 10/1/08 Promissory Note, DBI agreed to make twenty-four (24) monthly interest payments in the amount of $1,666.67 at an interest rate of twenty percent (20%) per annum.  Upon maturity DBI was obligated to repay Hoenig the entire principal amount of $100,000 as well.

25.     The 10/1/08 Promissory Note included the same security, default and attorneys' fees provisions as the 10/1/07 Promissory Note.

1312989.3

26.     DBI equally defaulted on the required interest payments due under the 10/1/08 Promissory Note, as well as its obligation to repay the promissory note.

27.     DBI failed and refused to cure its defaults.

**C.     *Restructuring $800,000 Worth of Debt Obligations***

28.     As of 2009, DBI owed $800,000 plus interest to Hoenig under the foregoing promissory notes.  On March 1, 2009, DBI took several steps to restructure and reaffirm the $800,000 debt and interest that it owed to Hoenig.

29.     First, DBI drafted a document that it titled "Promissory Note and Security Agreement Satisfaction," a true and correct copy of which is attached hereto as **Exhibit C** ("Satisfaction Agreement").

30.     This so-called Satisfaction Agreement purported to satisfy $400,000 of the 10/1/07 Promissory Note for $700,000.[1]

31.     In its second move on March 1, 2009, DBI issued another promissory note for $400,000 to Hoenig, a true and correct copy of which is attached hereto as **Exhibit D** (hereinafter, the "3/1/09 Promissory Note").

32.     Pursuant to the 3/1/09 Promissory Note, DBI agreed to make thirty-one (31) monthly interest payments in the amount of $7,000, which represented an interest rate of twenty-one percent (21%) per annum.  Upon maturity, DBI was obligated to repay Hoenig the principal balance of $400,000 in full.

33.     The 3/1/09 Promissory Note contained the foregoing security, default and attorneys' fees provisions as the previous promissory notes.

---

[1] The Satisfaction Agreement refers to a promissory note issued on September 20, 2007 for $700,000, but no such promissory note was issued to Hoenig.  The only promissory Note for $700,000 on behalf of Hoenig was issued on October 1, 2007.

34.     In or around August of 2010, DBI reaffirmed the $800,000 in principal owed to Hoenig and "rolled it over" with accrued interest into new debt instruments.  In an email dated August 5, 2010, Defendant Eiss, DBI's Chief Operating Officer and a Member of one or more of the Defendant LLCs, confirmed and reaffirmed that $800,000 in principal and $69,583 in "interest rollover" was due and owing to Hoenig.  A true and correct copy of this August 5, 2010 email is attached hereto as **Exhibit E**.

35.     Thus, as of August 5, 2010, DBI reaffirmed the debt owed Hoenig of at least $869,583 in principal and accrued interest, an amount that continued to increase as interest accrued but remained unpaid.

### D.     *DBI's Fraudulent Scheme to Induce Hoenig to Relinquish His Rights Under the Promissory Notes*

36.     Due to their failure to repay the principal and interest due under the foregoing promissory notes and other instruments, Defendants devised a scheme whereby they could extinguish their debt obligations to investors like Hoenig.

37.     Just a few months after issuing the 3/1/09 Promissory Note to Hoenig, Defendants announced via an email from Defendant Andrews that they were "making changes to [the] investment security structure and how our investors are secured."  Email from Andrews to Hoenig dated August 6, 2009, a true and correct copy of which is attached hereto as **Exhibit F**.

38.     Whereas investors' promissory notes were previously secured by mortgages, Defendants now suggested that investors would be "secured" by "the entity that owns the individual loans."  In effect, Defendants forced investors to relinquish their secured interests in the underlying mortgages and their promissory notes in favor of newly formed entities that allegedly would own those mortgages.

1312989.3

39.     In exchange, investors would purportedly obtain ownership interests, or equity, in these new entities, such as DBI Group Holdings, DBI Fund Holdings and DBI Residential (together with DBI, collectively referred to as the "DBI Defendants").

40.     As a result of a lack of value or assets in these newly formed entities that was known or should have been known by all Defendants, the purported equity conversions forced investors to incur a tremendous amount of new risk that was misrepresented and undisclosed to the investors, including Hoenig.  Under the original, as-bargained-for arrangement, if market conditions changed or Defendants mismanaged their obligations such that they defaulted, investors could recover some of their investment by exercising or assigning their right to foreclose upon individual mortgages.

41.     However, none of the Defendants provided Hoenig with the underlying mortgages as required.

42.     To induce unsophisticated investors like Hoenig to relinquish their secured positions, Andrews personally assured investors via the August 6, 2009 email that this new "security structure" would "increase[] the security for our investors," even though it had the exact opposite effect.  Andrews made these statements with the then-present knowledge that they were false and misleading or with a reckless disregard for their accuracy.

43.     Investors were similarly induced to relinquish their positions based on Andrews and Eiss' misrepresentations of exorbitant returns substantially higher than those reflected in the promissory notes.  In a letter dated August 11, 2009, Defendants misrepresented to investors including Hoenig that they would obtain rates of return of up to thirty-nine percent (39%) per annum under this new scheme.  *See* Letter from Andrews and Eiss to Hoenig dated August 11, 2009, p. 2, a true and correct copy of which is attached hereto as **Exhibit G**.

44.     To make the offer particularly tempting, Andrews and Eiss' letter included "Illustrations" tailored to Hoenig, showing exactly how much he would earn under this new scheme.  Under one of the "Illustrations," Defendants misrepresented that Hoenig would receive earnings of $534,028.34 in his fourth year alone.

45.     Defendants' misrepresentations regarding extravagant returns were false and intended to induce, and did in fact induce, Hoenig and others to relinquish their secured positions and guaranteed returns, while providing their funds to Defendants.

46.     Defendants increased the pressure on Hoenig, sending him multiple letters and emails requiring confirmation of his preferred investment choice by a date certain.  *See, e.g.*, Letter from Andrews and Eiss to Hoenig dated August 11, 2009 a true and correct copy of which is attached hereto as **Exhibit G**; Letter from Andrews and Eiss to Hoenig dated September 13, 2009, a true and correct copy of which is attached hereto as **Exhibit H**.

47.     At no time did DBI disclose or explain the material fact that Hoenig had the right not to convert his debt interests into "equity" in these shell entities or simply recover his funds and security.  To the contrary, Andrews misrepresented the material fact that investors actually had no choice, stating that investors were "require[d] . . . to make some decisions regarding [their] existing investment with us" because they "can no longer be secured directly by individual loans . . . ."  Email from Andrews to Hoenig dated August 6, 2009 a true and correct copy of which is attached hereto as **Exhibit F**.

48.     Defendants' attempts to convert Hoenig's debt interests was the product of fraudulent misrepresentations and omissions of material fact on their part.

49.     Under a purported "Contribution and Exchange Agreement," equity shares were "redeemed automatically, without further action by the holders or the Company, on the third

1312989.3

anniversary of the Initial Closing." *See* Summary of Terms of Preferred Units a true and correct copy of which is attached hereto as **Exhibit I**.

50.     Thus, even presuming that Defendants converted Hoenig's debt interests on January 6, 2010, they were nevertheless required to return Hoenig's investment on or around January 6, 2013.

51.     Defendants made a few minimal, inconsistent interest payments from and after 2012, but failed to pay the full amount of interest due to Hoenig or the principal balance due.

52.     Indeed, not one dollar of Hoenig's underlying $800,000 investment has been repaid notwithstanding continuing and ongoing misrepresentations that it would be repaid with interest.

### E.     *DBI's Ongoing Misrepresentations and Omissions of Material Facts*

53.     Despite fraudulently inducing investors to convert their debt into "equity," Defendants continued in their refusal to repay principal or interest.  Defendants failed to make a single payment to investors until late 2010.  *See* Email from Andrews and Eiss to Hoenig dated November 24, 2010, a true and correct copy of which is attached hereto as **Exhibit J** ("DBI is pleased to make our first Revenue Fund distribution at the end of November [2010].")

54.     Defendants nevertheless continued to send investors, including Hoenig, multiple letters and emails misrepresenting the performance of the so-called funds and fraudulently concealing their inability to pay and their scheme to convert funds to their own personal use.

55.     In several correspondences, Defendants Andrews and Eiss fraudulently highlight Defendants' supposed successes and detail their plans for increasing the amount and frequency of payments.  As examples, they made the following representations:

- Email from Andrews and Eiss dated February 12, 2010, a true and correct copy of which is attached hereto as **Exhibit K** ("We believe the liquidity issues will be fully resolved in the next several months as . . . new capital

1312989.3

starts to flow in from DBI's new Operations Fund.") ("We are also designing a program by which our investors will be compensated for … interest payment delays.");

- Email from Eiss to Hoenig dated April 7, 2010, a true and correct copy of which is attached hereto as **Exhibit L** ("While you are already earning and accruing returns on your capital . . . , there have been no investor distributions to date," but "we expect the first investor distributions to be made in the 3rd quarter of this year.");

- Email from Andrews to Hoenig dated July 1, 2010, a true and correct copy of which is attached hereto as **Exhibit M** ("We are still on track to make our first distributions in Q3 and this [recent] acquisition accelerates the timeframe.");

- Email from Andrews to Hoenig dated February 10, 2012, a true and correct copy of which is attached hereto as **Exhibit N** ("We are working hard on [these] initiatives and while distributions will continue to be made on a cash available basis, we expect to be making our next payments to Investors no later than March 31, 2012.");

- Email from Andrews to Hoenig dated June 22, 2012, a true and correct copy of which is attached hereto as **Exhibit O** ("This significantly improves DBI's upfront cash flow, enabling it to expand resources and increase the amount and frequency of investor distributions.");

- Letter from Andrews to Hoenig dated September 30, 2012, a true and correct copy of which is attached hereto as **Exhibit P** ("we're working very hard to repay the remaining purchase capital so that we may increase . . . the frequency and size of the distributions to you.");

- Letter from Andrews to Hoenig dated November 16, 2012, a true and correct copy of which is attached hereto as **Exhibit Q** ("We appreciate your support as we execute our plan to repay the Purchase Capital and re-start/accelerate investor payments.");

- Letter from Andrews to Hoenig dated December 21, 2012, a true and correct copy of which is attached hereto as **Exhibit R** ("We expect monthly distributions to resume in the 1st quarter and significantly increase in amount throughout 2013."); and

- Letter from Andrews to Hoenig dated March 21, 2013, a true and correct copy of which is attached hereto as **Exhibit S** ("The result of these two initiatives will be a subsequent increase in the frequency and amount of investor distributions.").

1312989.3

56.     Defendants knew or should have known that all of the foregoing representations were false and misleading and that their investors, including Hoenig, would reasonably rely on these misrepresentations.  Defendants fraudulently concealed these material misrepresentations and omissions on an ongoing basis as part of their scheme to extract millions of dollars from investors.

57.     On October 29, 2015, Hoenig delivered to Defendants a Notice of Default under the promissory notes, a true and correct copy of which is attached hereto as **Exhibit T**.

58.     The Notice of Default made it clear that DBI's conversion scheme was unlawful and invalid as a matter of law.

59.     Defendants failed to respond to the Notice of Default or to cure any of the foregoing defaults.

<u>**COUNT I – BREACH OF CONTRACT**</u>
**(Promissory Notes)**

60.     Hoenig incorporates the allegations contained in paragraphs 1 to 59 of the Complaint as though fully set forth herein.

61.     As reflected in the promissory notes attached to the instant Complaint, DBI entered into binding written contracts supported by ample consideration.

62.     Hoenig fulfilled his obligations under the promissory notes by providing the principal sums of money reflected in each of those promissory notes as agreed.

63.     DBI reaffirmed the debts owed to Hoenig as recently as August of 2010 when it admitted that Hoenig was then owed principal and accrued interest of $869,583 with interest continuing to accrue on the outstanding balance.  DBI also reaffirmed these debts by reissuing new debt instruments and promissory notes to replace and update the existing ones.

1312989.3

64.     DBI materially breached the terms and conditions of each of the promissory notes and other instruments by failing and refusing to make required interest payments as they became due and by failing to repay the principal balance upon maturity as required by their express terms and conditions of these various promissory notes and other instruments.

65.     Although Hoenig had no obligation to notify DBI of his intent to exercise his rights under the promissory notes, he nonetheless caused a Notice of Default to be issued to DBI. DBI failed and refused to cure the breaches.

66.     DBI materially breached the terms and conditions of the governing promissory notes and instruments  in the amounts of accrued but unpaid interest and the principal sums due under those promissory notes, which breaches exceed $1,000,000, not including fees, expenses, and further accruing interest and penalties.

67.     Under the terms of the promissory notes, DBI is liable for all reasonable attorneys' fees and expenses incurred by Hoenig in this litigation.

WHEREFORE, Hoenig demands judgment against DBI in an amount of not less than $1,000,000 to be fully and fairly determined at trial together with all contractual accrued interest, fees and expenses as of the time of judgment, as well as pre and post-judgment interest, attorneys' fees and expenses pursuant to the terms of the promissory notes, and for such other and further relief as this Court deems just and appropriate.

### COUNT II – BREACH OF CONTRACT
**(Contribution and Exchange Agreement)**

68.     Hoenig incorporates the allegations contained in paragraphs 1 to 67 of the Complaint as though fully set forth herein.

I312989.3

69.     To the extent that DBI's conversion of Hoenig's debt interests into equity shares is deemed valid and enforceable, Defendants breached the terms of the Contribution and Exchange Agreement effecting that equity conversion.

70.     As reflected in the Contribution and Exchange Agreement and its accompanying Summary of Terms, Defendants were required to issue shares to Hoenig worth $869,583.35 as of the date of issuance.  *See* Contribution and Exchange Agreement, a true and correct copy of which is attached hereto as **Exhibit U**; *see* Summary of Terms of Preferred Units (**Exhibit I**).

71.     As the Managing Member of DBI Group Holdings, and a Member and President of DBI, Palmer engaged in material misrepresentations and omissions through the Contribution and Exchange Agreement, which was written by or on Palmer's behalf and on which he was a signatory.

72.     This Contribution and Exchange Agreement incorporates by reference a Summary of Terms associated with the debt conversion scheme, pursuant to which Palmer misrepresented the material act that Hoenig's investments would be automatically redeem and repaid after three years.

73.     Defendants were also required to make regular payments over a three-year period of time and to redeem and return the value of those shares automatically at the end of that term.

74.     Defendants materially breached the terms and conditions of the Contribution and Exchange Agreement by failing and refusing to make required payments and by failing to repay the principal sum owed to Hoenig.

75.     Hoenig caused a valid written Notice of Default to be issued to Defendants, demanding repayment of the value of his shares and all unpaid earnings.  Hoenig also contacted

1312989.3

Defendants on several prior occasions, demanding redemption and repayment of his shares and all unpaid earnings.

76.     Defendants materially breached the terms and conditions of the Exchange Agreement, which breaches exceed $1,000,000, not including fees, expenses, and further accrued and accruing interest and penalties.

77.     Defendants failed and refused to cure the breaches.

WHEREFORE, Hoenig demands judgment against Defendants DBI, DBI Group Holdings, DBI Fund Holdings and DBI Residential in an amount exceeding $1,000,000 to be fully and fairly determined at trial together with pre and post-judgment interest, attorneys' fees and expenses pursuant to the terms of the promissory notes, and for such other and further relief as this Court deems just and appropriate.

<u>COUNT III – SECURITIES FRAUD</u>
**(Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b–5)**

78.     Hoenig incorporates the allegations contained in paragraphs 1 to 77 of the Complaint as though fully set forth herein.

79.     Under the Securities Exchange Act of 1934, as made effective by 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5, it is unlawful to use or employ any deceptive device in connection with the purchase or sale of any security. This includes making any untrue statement of material fact or omitting any material fact.

80.     Defendants engaged and engage regularly in the purchase or sale of securities, including the purported sale of securities and equity investments in various entities based on the alleged purchase of mortgages, particularly the issuance of equity shares in entities such as DBI Group Holdings, DBI Fund Holdings and DBI Residential.

1312989.3

81.     Defendants employed multiple devices, schemes and artifices to defraud investors, including Hoenig, of their funds, including but not limited to representations that the funds and entities they invested in were sufficiently capitalized and possessed assets including portfolios of residential mortgages, as well as misrepresenting exorbitant rates of return on those investments.

82.     Defendants collectively and individually made multiple misrepresentations and omissions of material fact necessary to make other statements made, in the light of the circumstances under which they were made, not misleading.

83.     These misrepresentations and omissions included, but are not limited to, (i) the fact that investors, including Hoenig, were required to convert existing and enforceable debt instruments into worthless equity investments in under-capitalized shell entities; (ii) the material omission of the fact that investors, like Hoenig, could maintain their debt instruments and fixed interest rights; (iv) the material misrepresentation that investors would be made more secure by the conversion of their secured debt to equity in shell entities; (iii) the material misrepresentation of returns based on false premises while failing to disclose the precarious financial condition of the entities and co-called funds; and (iv) the material misrepresentation that their entire investment would be repaid to them.

84.     These misrepresentations and omissions were made by Defendants in order to induce Hoenig to relinquish his secured interests in the promissory notes and underlying collateral in exchange for shares in DBI Group Holdings, DBI Fund Holdings and DBI Residential in order to evade Defendants obligations to repay Hoenig.

85.     Moreover, on August 6, 2009, August 11, 2009, and September 13 2009, among other instances, Defendants transmitted letters to Hoenig that misrepresented the material fact

-16-

that Hoenig was required to convert his secured interests into these purported equity shares. *See* Email from Andrews to Hoenig dated August 6, 2009 (**Exhibit F**) ("[You] can no longer be secured directly by individual loans," and you are "require[d] . . . to make some decisions regarding [your] existing investment with us."); *See* Letter from Andrews and Eiss to Hoenig dated August 11, 2009 (**Exhibit G**) ("[O]ur investors can no longer be secured directly by individual loans," so "[w]e need you to advise us by email which [investment] option you intend to choose."); Letter from Andrews and Eiss to Hoenig dated September 13, 2009 (**Exhibit H**) ("[C]onfirm your preferred investments choice with us no later than Friday, September 18th").

86.     These statements were false and materially misleading because, as the holder of promissory notes and security agreements, Hoenig did not have to relinquish his rights in exchange for equity in newly formed shell entities for the very purpose of effectuating Defendants fraudulent scheme to deprive Hoenig of the funds he provided to them.

87.     Defendants knowingly omitted the material fact that Hoenig had the legal right <u>not</u> to convert his secured promissory notes into equity because Defendants sought to induce Hoenig to relinquish his rights while retaining his money.

88.     To further induce Hoenig to convert his secured debt interests, Defendants misrepresented the rates of return that Hoenig would obtain, which they knew, as financial and investment professionals, were false and misleading.  Defendants knowingly misrepresented these facts to induce Hoenig to relinquish his debtor rights under the promissory notes while retaining his funds.

89.     As the Managing Member of DBI Group Holdings, and a Member and President of DBI, Palmer engaged in material misrepresentations and omissions through the Contribution

and Exchange Agreement, which was written by or on Palmer's behalf and on which he was a signatory.

90.     This Contribution and Exchange Agreement incorporates by reference a Summary of Terms associated with the debt conversion scheme, pursuant to which Palmer misrepresented the material act that Hoenig's investments would be automatically redeem and repaid after three years.

91.     Defendants knew or should have known that all of these misrepresentations and omissions were false and misleading at the times they were each made, and that they would induce Hoenig's continued investment in Defendants' scheme.

92.     Defendants acted intentionally and knowingly or with reckless disregard for the falsity of the misrepresentations and omissions made to Hoenig.

93.     In direct and justifiable reliance upon these misrepresentations and omissions of material fact, Hoenig provided Defendants with substantial funds and permitted Defendants to retain his funds, all of which caused him substantial economic loss and the possible relinquishment of valuable rights based on Defendants' scheme.

94.     Hoenig has not recovered a single dollar of his investment of over $800,000, nor has he received the amount of interest or returns to which he is entitled under either the promissory notes or Exchange Agreement.

95.     As a direct and proximate result of their multiple and ongoing fraudulent misrepresentations and scheme, Defendants caused Hoenig to suffer substantial damages in an amount no less than $1,000,000.

WHEREFORE, Hoenig demands judgment against DBI in an amount exceeding $1,000,000 to be fully and fairly determined at trial together with interest, fees and expenses as

1312989.3

of the time of judgment, and for such other and further relief as this Court deems just and appropriate.

## COUNT IV – FRAUD

96.     Hoenig incorporates the allegations contained in paragraphs 1 to 93 of the Complaint as though fully set forth herein.

97.     As alleged throughout the instant Complaint, Defendants individually and collectively made numerous and ongoing misrepresentations of material fact to Hoenig and other investors, numerous and ongoing omissions of material fact where Defendants had the obligation to disclose such material facts to Hoenig and other investors, and individually and collectively engaged in an ongoing scheme and conspiracy to defraud Hoenig and other investors.

98.     Defendants knew or should have known that the representations and omissions made were false and misleading or they acted with reckless disregard for their accuracy.

99.     Defendants knew that Hoenig and other investors would reasonably and justifiably rely on their misrepresentations and omissions, and Hoenig and other investors did reasonably and justifiably rely on Defendants fraud by providing them with millions of dollars.

100.    To the extent that any of the foregoing misrepresentations were promissory in nature, Defendants made these promises with no then-present intention to perform them and with actual knowledge of their falsity when made or a then-present reckless disregard for their truth when made.

101.    Defendants engaged in gross, wanton, or willful fraud or other morally culpable conduct as alleged throughout the instant Complaint that entitles Hoenig to recovery of punitive damages.

1312989.3

WHEREFORE, Hoenig demands judgment against DBI in an amount exceeding $1,000,000 to be fully and fairly determined at trial together with punitive damages in an amount of at least $1,000,000, interest, fees and expenses as of the time of judgment, and for such other and further relief as this Court deems just and appropriate.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court:

1)  Award compensatory damages to Hoenig to be proven at trial for breach of contract;

2)  Award compensatory damages to Hoenig to be proven at trial for violations of the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b–5;

3)  Award compensatory and punitive damages to be proven at trial for Defendants fraud Award costs of suit and pre- and post-judgment interest;

4)  Award Hoenig reasonable attorneys' fees and expenses associated with the instant litigation; and

5)  Award such other and further relief as the Court may deem just and proper.

Dated: December 21, 2015

**SAUL EWING LLP**

By:   /s/ Michael Rowan
      Michael Rowan
      650 College Road East, Suite 4000
      Princeton, New Jersey 08540
      Tel.: (609) 452-3100
      mrowan@saul.com

      New York Office:
      555 Fifth Avenue, Suite 1700
      New York, New York 10017

1312989.3

Of Counsel:                         Donald A. Rea (motion for *pro hac vice*
                                    admission to be filed)
                                    500 East Pratt Street, 8th Floor
                                    Baltimore, Maryland 21202-3133
                                    Tel.: (410) 332-8600
                                    drea@saul.com

### Jury Demand

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: December 21, 2015            **SAUL EWING LLP**

                           By:      /s/ Michael Rowan
                                    Michael Rowan
                                    650 College Road East, Suite 4000
                                    Princeton, New Jersey 08540
                                    Tel.: (609) 452-3100
                                    mrowan@saul.com

                                    New York Office:
                                    555 Fifth Avenue, Suite 1700
                                    New York, New York 10017

Of Counsel:                         Donald A. Rea (motion for *pro hac vice*
                                    admission to be filed)
                                    500 East Pratt Street, 8th Floor
                                    Baltimore, Maryland 21202-3133
                                    Tel.: (410) 332-8600
                                    drea@saul.com

1312989.3